J. W. PETERSON v. CHICAGO GREAT WESTERN RAILWAY COMPANY.[1]

December 18, 1908.

Nos. 15,941—(126).

**Abuse of Discretion to Deny New Trial.**

In a personal injury action, it is *held* that, while there was some
evidence tending to sustain the verdict for the plaintiff, and the court
therefore properly refused to direct a verdict for the defendant, yet the
preponderance of the evidence against the verdict was so great that it
was an abuse of discretion for the trial court not to grant a new trial
and submit the case to another jury.

Action in the district court for Freeborn county to recover $15,-
000 for personal injuries. The answer set out a written release and

[1] Reported in 118 N. W. 1016.

discharge by plaintiff of any and all claims or demands of any and every kind against defendant which he had executed in consideration of $250 and the payment of his hotel and doctors' bills. The case was tried before Kingsley, J., and a jury, which rendered a verdict for $3,000 for plaintiff. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*A. G. Briggs, T. P. McNamara,* and *Lafayette French,* for appellant.

*Dunn & Carlson,* for respondent.

ELLIOTT, J.

This case comes to this court on an appeal from an order denying the defendant's motion for a judgment notwithstanding the verdict or for a new trial. The motion for judgment was properly denied, but we are satisfied that the verdict was manifestly so against the great preponderance of the evidence that it was an abuse of discretion not to grant a new trial and submit the case to another jury.

The action was brought to recover damages for personal injuries claimed to have been suffered while the respondent was a passenger on one of the appellant's trains. The circumstances of the accident need not be considered, as it is conceded that the railway company was liable for the damage which resulted by reason of the injury to the respondent. The railway company claimed that a full settlement had been made with the respondent before the action was commenced. It is admitted that the company paid Mr. Peterson $250, and that at the time of its receipt he signed a paper which purported to release the company from any further liability. The question is whether Peterson was induced to sign this paper while in a mental condition which rendered him incapable of understanding what he was doing. The jury found in favor of the plaintiff.

The respondent was injured on April 16, 1907. Immediately after the accident he was taken to a hotel in St. Charles, where he remained under the care of a physician and nurses until April 18, when he was visited by the company's claim agent. The plaintiff's testimony tends to show that during this time he was delirious and out of his mind. He testified that the first thing he remembered was that he saw the

landlord of the hotel standing at the foot of his bed; that he had no recollection of a visit made him by a friend on the seventeenth; that he remembered that a man came to him and said that he was the claim agent of the road, and that he had come there "to pay up these expenses for you," and that he signed what he was told and understood was a receipt. He remembered no talk about settling for his injuries. He then "dozed away." He had no recollection of any other incident at St. Charles, or during his trip home from St. Charles to Clinton, Iowa, except disconnected incidents which occurred on the way home. The effect of his evidence was that he was practically unconscious from the time he was injured until he reached his home on April 19; that is, his mind was a blank, but for glimmering recollections of certain disconnected incidents. He remained at his home until May 14, when he resumed his labors as a traveling salesman. This action was not commenced until September, 1907.

The plaintiff's case rested upon the truth of his assertion that he was practically unconscious from the time of his injury until after he reached his home, and that while in such condition the claim agent took advantage of him and got him to settle his claim for $250. His testimony is corroborated to some extent, but the overwhelming weight of testimony is to the effect that at least before he cashed the check and left St. Charles he was fully aware of the fact that he had made the settlement. He was injured during the forenoon of April 16. The settlement was made about eleven a. m. of April 18. On the evening of that day he dictated and signed a letter to his employers, in which he stated: "I am going home. Will return just as soon as I can. I will leave my trunks with the Great Western agent at St. Charles, and will either send for them or get them on my return." On the morning of the eighteenth he wrote three letters. On the nineteenth he went to the Citizens' State Bank of St. Charles and cashed the check for $250 which he had received from the railway company. On the same day he wrote a letter to the secretary of an accident insurance company, in which he carried a policy, asking him to send blanks necessary to make proof of his injury to his home address in Clinton, Iowa. When he cashed his check at the bank, he informed the president and teller that he had settled with the company, that he was satisfied with the settlement, that he had to be out on the road and at-

tend to his duties, and that he had settled quickly because his time was limited. This evidence of disinterested parties stands uncontradicted, and the inevitable inference is that when Mr. Peterson cashed the check·he was in possession of his senses and knew what he was doing. Both the bank officers testified that he appeared perfectly rational. Other witnesses testified that he discussed the settlement with them and appeared perfectly satisfied.

There was some evidence tending to support a verdict for the plaintiff, and therefore the court would not have been justified in directing a verdict for the defendant; but the verdict is so manifestly against the great preponderance of the evidence that it was an abuse of discretion not to grant a new trial and submit the case to another jury. Voge v. Penney, 74 Minn. 525, 77 N. W. 422; Martin v. Courtney, 75 Minn. 255, 262, 77 N. W. 813; Messenger v. St. Paul City Ry. Co., 77 Minn. 34, 42, 79 N. W. 583. As the case must be sent back for a new trial, we refrain from further comment on the evidence.

Order reversed, and a new trial granted.